No. 20-5207

# In the United States Court of Appeals for the District of Columbia Circuit

WESLEY I. PURKEY,
PLAINTIFF-APPELLEE,

V.

WILLIAM P. BARR, ET AL.,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA, D. CT. NO. 1:19-CV-3570 (HON. TANYA S. CHUTKAN)

## EMERGENCY MOTION TO STAY OR VACATE PRELIMINARY INJUNCTION BARRING EXECUTION OF WESLEY PURKEY

MICHAEL R. SHERWIN
   Acting United States Attorney
   District of Columbia

BRIAN P. CASEY
J. BENTON HURST
DAVID WAGNER
   Assistant United States Attorneys
   Western District of Missouri

BRIAN C. RABBITT
   Acting Assistant Attorney General
   Criminal Division

CHRISTOPHER J. SMITH
   Attorney
   Appellate Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave. NW
   Suite 1264
   Washington, DC 20530
   (202) 532-4154
   Christopher.J.Smith@usdoj.gov

## INTRODUCTION AND SUMMARY OF ARGUMENT

Shortly after 5:00 a.m. today, the district court preliminarily enjoined the execution of Wesley Purkey, which the Bureau of Prisons had scheduled to occur later today, based on Purkey's claim of incompetence to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). This last-minute injunction is inappropriate, and the standard for a stay or vacatur of the injunction is readily satisfied. The government respectfully requests that this Court stay or vacate the preliminary injunction, effective immediately, to permit the government to proceed with the scheduled execution. If the Court chooses to vacate rather than stay, the government requests that it issue its mandate forthwith.[1]

As an initial matter, Purkey has not shown a significant possibility of success on the merits. Federal prisoners who seek to challenge their execution under *Ford* may do so only by filing an application for habeas corpus relief under 28 U.S.C. § 2241 in the district of their confinement. The district court here had no authority to circumvent that requirement by inferring a new, unwritten cause of action directly from the Eighth Amendment (and, indeed, never even acknowledged that that was what it was doing).

Moreover, Purkey has also failed to demonstrate that he is likely to succeed on the merits of his claims that he is incompetent to be executed or that his due process

---

[1] Because of the timing of the district court's order, this motion could not be filed seven days before action is necessary. The government has moved the district court to stay its order, but the district court has not yet ruled on that motion. Given the time constraints, the government will also be filing a similar stay application in the Supreme Court.

rights will be violated absent a competency hearing. A prisoner must make "a substantial threshold showing" of incompetency before he is entitled to a hearing on his competency, *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) (internal quotation marks omitted), which Purkey has never done. To the contrary, by his own account, Purkey understands the reason for his execution.

The remaining considerations all weigh heavily against further injunctive relief. The public interests in "punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (internal quotation marks omitted), and "timely enforcement of a [death] sentence," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (internal quotation marks omitted), would be frustrated by further delaying Purkey's execution. So, too, is the public interest in "preventing forum shopping by habeas petitioners." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). The balance of the equites weighs the same way: Purkey's death sentence has been reviewed multiple times and withstood all challenges.

## STATEMENT

### A.    Background

Purkey kidnapped, raped, and murdered 16-year-old Jennifer Long. *United States v. Purkey*, 428 F.3d 738, 744-45 (8th Cir. 2005). He then dismembered her with a chainsaw and burned her remains. *Id.* at 745. He confessed to Long's murder while serving a life sentence in Kansas for his later murder of 80-year-old Mary Ruth Bales, whom he bludgeoned to death with the claw-end of a hammer. *Id.* at 745-46. The district court sentenced him to death, and the Eighth Circuit affirmed. *Id.* at 764. The district

court later denied his motion under 28 U.S.C. § 2255, and the Eighth Circuit again affirmed. *Purkey v. United States*, 729 F.3d 860, 861-62, 869 (8th Cir. 2013).

On July 25, 2019, the Attorney General scheduled Purkey's execution for December 13, 2019. Compl., ECF No. 1. Subsequently, on November 20, 2019, the court below enjoined Purkey's execution on the basis of claims in the execution protocol litigation, but this Court subsequently vacated that injunction. *In re Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 113 (D.C. Cir. 2020) (per curiam). The Supreme Court declined to stay this Court's mandate and denied certiorari. *Bourgeois v. Barr*, __ S. Ct. __, Nos. 19-1348, 19A1050, 2020 WL 3492763 (U.S. June 29, 2020).

On August 27, 2019, Purkey filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Southern District of Indiana, seeking relief on eight grounds. Petition, ECF No. 1, *Purkey v. United States*, No. 2:19-cv-414 (S.D. Ind. Aug. 27, 2019). Though he included a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), challenging the imposition of his death sentence based on his alleged incompetency when he committed the offense, *see id.* at 192-200, he did not include a *Ford* claim challenging his present competency to be executed.

On November 20, 2019, the Indiana court denied Purkey's petition as barred by § 2255(e), *Purkey v. United States*, No. 2:19-cv-414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019), and the Seventh Circuit affirmed, *Purkey v. United States*, __ F.3d __, No. 19-3318, 2020 WL 3603779, at *11 (7th Cir. July 2, 2020). Despite ruling for the United States on the merits, the Seventh Circuit nonetheless "temporarily stayed" Purkey's July

15, 2020, execution. *Id.*; *see also Purkey v. United States*, __ F. App'x __, 2020 WL 3958442 (7th Cir. July 13, 2020) (denying reconsideration). On July 11, 2020, the government filed an application in the Supreme Court to vacate the stay. Application, *United States v. Purkey*, No. 20A4 (July 11, 2020). That application remains pending.

On July 13, 2020, the court below again enjoined the execution of Purkey and his co-plaintiffs. *In re Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145, 2020 WL 3960928 (D.D.C. July 13, 2020). While this Court denied the government's emergency motion to stay that order, *In re Bureau of Prisons' Execution Protocol Cases,* No. 20-5199 (D.D.C. July 13, 2020), the Supreme Court subsequently vacated the district court's preliminary injunction, *Barr v. Lee*, __ S. Ct. __, 2020 WL 3964985 (U.S. July 14, 2020). The Court reiterated that "[l]ast-minute stays' like that issued this morning 'should be the extreme exception, not the norm.'" *Id.* at 2 (quoting *Bucklew v. Precythe,* 139 S. Ct. 1112, 1134 (2019)).

## B. District Court Proceedings

On November 26, 2019—six days after the court below originally enjoined the executions in the *Protocol Cases* and the Indiana court dismissed Purkey's § 2241 petition—Purkey filed his complaint in this case raising the *Ford* claim that he omitted from his § 2241 petition. Compl., ECF No. 1. According to Purkey, his complaint seeks "equitable relief directly under the Constitution and declaratory relief under 28 U.S.C. § 2201(1) and 28 U.S.C. § 2202." Brief, ECF No. 14 at 2. He moved for a preliminary injunction and expedited discovery. Motion, ECF No. 7. The government opposed

Purkey's motion and argued in the alternative that the district court should transfer the action to the Southern District of Indiana. Opp., ECF No. 10. Shortly thereafter, Purkey withdrew his motion. Motion, ECF No. 11. On February 24, 2020, the government moved to dismiss Purkey's complaint. MTD, ECF No. 18. The parties concluded briefing on that motion on March 30, 2020.

After this Court issued its mandate in the *Protocol Cases*, on June 15, 2020, the government scheduled Purkey's execution for July 15, 2020. A week later, Purkey renewed his motion for a preliminary injunction and expedited discovery. ECF Nos. 23, 24. While the government has sent defense counsel the reports and original imaging from Purkey's most recent medical scans, the government again opposed Purkey's motion. Opp., ECF No. 26. The parties concluded briefing on these motions on July 2, 2020.

This morning, the district court granted his motion for preliminary injunction. ECF No. 36. The court concluded that it could entertain Purkey's freestanding constitutional claims, on the view that they are not habeas claims that he is required to bring under 28 U.S.C. § 2241 in his district of confinement. *Id.* at 6-9. The court then "credit[ed]" the attachments submitted by Purkey and opined that he had made a substantial showing that he is not competent to be executed. *Id.* at 10-11. And, taking the view that the remaining preliminary injunction factors weighed in favor of enjoining Purkey's execution, the court denied the government's long-pending motion to dismiss and enjoined Purkey's execution. *Id.* at 11-14. Finally, the court ordered Purkey to show

cause, no later than July 31, why the court should not exercise its discretion to transfer the case to the Southern District of Indiana. *Id.* at 13-14

At the same time, the district court granted another preliminary injunction in the Protocol Cases that independently prohibits the government from proceeding with Purkey's execution. The government is also filing in this Court a motion to stay or vacate that injunction (in Case No. 20-5206).

## ARGUMENT

Under the standards in *Nken v. Holder,* 556 U.S. 418, 426 (2009), this Court should enter an immediate stay given the overwhelming likelihood that the injunction will not withstand appellate review and the profound public interest in implementing Purkey's lawfully imposed sentence without further delay.

## I. THE DISTRICT COURT'S INJUNCTION IS UNLIKELY TO WITHSTAND APPELLATE REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). In the capital context, as in others, a plaintiff must first "establish that he is likely to succeed on the merits." *Glossip v. Gross*, 135 S. Ct. 2726, 2736 (2015) (quoting *Winter*, 555 U.S. at 20). For two separate dispositive reasons—because Purkey's claims can be brought only in the district of his confinement under Section 2241 and because Purkey has not demonstrated that he is likely to be found incompetent to be executed—Purkey cannot make the required showing here.

6

### A. The Injunction Rests on Legal Error

#### 1. The district court had no authority to grant Purkey relief

Because Purkey's claims of incompetency to be executed under *Ford* are cognizable only in a petition for a writ of habeas corpus under 28 U.S.C. § 2241, filed in the district where he is confined (the Southern District of Indiana), the district court lacked authority to entertain such claims as freestanding equitable causes of action asserted under the Constitution.

Congress may limit a court's power to provide equitable relief, even for violations of constitutional rights. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2014); *see Hinck v. United States*, 550 U.S. 501, 506 (2007). "Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary." *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 74 (1996).

Section 2241 precludes resort to more general causes of action. For example, an action under 42 U.S.C. § 1983 "must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *accord Muhammad v. Close*, 540 U.S. 749, 750-51 (2004) (per curiam). "By contrast, constitutional claims that merely challenge the

conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." *Nelson*, 541 U.S. at 643. "It would wholly frustrate explicit congressional intent," the Supreme Court has explained, to permit prisoners to evade the habeas statute's procedural requirements "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973).

The Supreme Court has recognized that the distinction between a challenge to the "fact of [a] conviction or the duration of [a] sentence" and a challenge to "the conditions of a prisoner's confinement" does not translate perfectly to the death penalty. *Nelson*, 541 U.S. at 643. In death penalty litigation, the "criterion" is "whether a grant of relief to the inmate would necessarily bar the execution." *Hill v. McDonough*, 547 U.S. 573, 583 (2006). If so, that claim is akin to a challenge to the fact of a conviction or to the duration of a sentence and must be brought in habeas. *See id.* at 580-83; *Nelson*, 541 U.S. at 643-44. In contrast, claims that would not necessarily bar the prisoner's execution if successful are similar to challenges to conditions of confinement and thus cannot be raised in a habeas petition. *See Nelson*, 541 U.S. at 644 ("A suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself—by simply altering its method of execution, the State can go forward with the sentence."); *Hill*, 547 U.S. at 580 (concluding that the plaintiff could sue under § 1983 because his "action if successful would not necessarily prevent the State from executing him by lethal injection").

Unlike the prisoners in *Nelson* and *Hill*, Purkey asked the district court to enjoin the government from executing him, and therefore, he must bring that claim in habeas. If successful, Purkey's *Ford* claim would "necessarily bar [his] execution." *Hill*, 547 U.S. at 583. This Court need look no further than Purkey's prayer for relief, which asks for "an injunction preventing his execution during any period of incompetency, and lasting until such time as his competency is restored." Compl. at 57, ECF No. 1. Unlike the prisoners in *Nelson* and *Hill*, Purkey does not challenge the means of his execution, but the Government's ability to execute him at all. Because Congress has provided that a habeas petition under § 2241 is the exclusive cause of action for Purkey's claim, he has failed to show a likelihood of success in this suit.

The district court's contrary analysis has no basis in this precedent. The court found that a *Ford* claim speaks to "when execution would be appropriate" and thus "does not see to bar [a prisoner's] execution or challenge his sentence." ECF No. 36, at 8. The court misunderstood the relevant temporal considerations; the Supreme Court determines the exclusivity of habeas based on what a successful claim would immediately require the government to do. *Hill* held that the claim in that case could proceed under § 1983 because, "at this stage of the litigation, the injunction Hill seeks would not necessarily foreclose the State from implementing the lethal injection sentence under present law." *Hill*, 547 U.S. at 583. The rule is thus clear: where a successful claim would preclude a defendant's execution under current law, it is effectively a request to bar the execution and may be raised only in habeas. Similarly,

where a successful claim would bar execution until a future condition that might never occur—*e.g.*, until a defendant is restored to competency, if ever—it is effectively a request to bar the execution and can proceed only in habeas. The district court likewise erred in finding that Purkey's due process claim can be brought as a freestanding claim outside of habeas, *see* ECF No. 36, at 8; Purkey has no entitlement to any specific process until he makes the threshold showing of incompetency, and, for the reasons previously discussed, he must bring the *Ford* claim and make that threshold showing in a § 2241 suit.[2]

Crucially, the court below could not simply construe Purkey's complaint as a habeas petition because the court lacked jurisdiction over an absent and necessary party: Purkey's custodian, the warden of the prison where he is confined. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *accord Day v. Trump*, 860 F.3d 686, 689 (D.C. Cir. 2017); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238-39 (D.C. Cir. 2004).

---

[2] The district court incorrectly suggested that the government "waived" any objection to the district court's adjudication of Purkey's core habeas claims.  ECF No. 36, at 9. Not so. The government consistently argued that Purkey's *Ford* claim "could be (and must be) brought through a habeas petition in the Southern District of Indiana . . . and therefore cannot be brought in this Court under the APA."  ECF No. 10, at 2.

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Padilla*, 542 U.S. at 434 (quoting 28 U.S.C. § 2242). "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. "This rule . . . serves the important purpose of preventing forum shopping by habeas petitioners." *Id.* at 447.

Purkey is confined at the United States Penitentiary in Terre Haute, Indiana. Compl. at 3, ECF No. 1. His warden is the only proper defendant to habeas claims. The warden does not lie within the district court's territorial jurisdiction. For that reason, the government has shown a likelihood of success on the merits.

Purkey has conceded that a prisoner may raise a *Ford* claim in a habeas petition under § 2241, Brief at 7, ECF No. 14, and his counsel admitted his *Ford* claim was ripe when Purkey litigated his earlier § 2241 petition in the Southern District of Indiana, Ex. 20 to Woodman Decl. at 1-3, ECF No. 7-22; Compl. at 5, ECF No. 1. His choice to forgo *Ford* litigation in that district may well have been strategic, given the prior unfavorable rulings from the Indiana district court on his other § 2241 claims. *Purkey v. United States*, No. 19-cv-00414, 2019 WL 6170069, at *1 (S.D. Ind. Nov. 20, 2019). But such a choice does not resolve the issues attendant to the proceedings here.

### 2. Purkey failed to demonstrate a likelihood of success on his *Ford* claim

A prisoner is incompetent to be executed only if he is unable to "reach a rational understanding of the reason for his execution." *Madison v. Alabama*, 139 S. Ct. 718, 723 (2019) (brackets and internal quotation marks omitted). And before he is entitled to a hearing on the issue of his competency, Purkey must first make a substantial threshold showing of incompetency. *See Panetti v. Quarterman*, 551 U.S. 930, 949 (2007); *Ford v. Wainwright*, 477 U.S. 399, 425-26 (1986) (Powell, J., concurring) ("The [Government] . . . may properly presume that [a prisoner] remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process.") (footnote omitted).

The only direct support for Purkey's incompetency claim is the report of Dr. Bhushan Agharkar, a psychiatrist who interviewed Purkey in November 2019. Compl. Ex. 1 at 2, ECF No. 1-1. Although Dr. Agharkar opines that Purkey is incompetent to be executed, his report is fundamentally flawed because it conflates Purkey's understanding of the reason for his *execution*, which would be constitutionally disqualifying under *Ford*, with Purkey's understanding of the reason for *scheduling his execution date*, which is not.

Dr. Agharkar acknowledges that Purkey can articulate the reason for his execution. "Mr. Purkey first . . . accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11, ECF No. 1-1. But, "[a]s the visit

continued, . . . Mr. Purkey began to talk about the 'real reason' he was going to be executed," which was his "filing lawsuits for other people's cases." *Id.* Dr. Agharkar writes that "[w]hen I inquired further, Mr. Purkey also told me that he was given a date for execution unfairly and for reverse discrimination. He told me that we didn't need to talk about this because I could just read his filings." *Id.* Dr. Agharkar opines that "to a reasonable degree of medical certainty, at the time of the evaluation, Mr. Purkey lacked a rational understanding of the basis for his execution.*" Id.* at 11-12.

By mentioning "his filings," Purkey was referring to a pro se civil rights action that he brought in the Southern District of Indiana in October 2019. *See* Compl. Ex. 15 at 12, ECF No. 1-18. Purkey's pro se complaint alleges that his constitutional rights were violated by "the defendants['] deliberate arbitrary selection of his execution date, which was substantially motivated by his protracted jailhouse lawyering." *Id.* He alleges that he was arbitrarily and discriminatorily selected for execution before other death row prisoners who had previously exhausted their appellate rights. *Id.* at 19-20. His complaint, although legally deficient, is coherent and refutes his claim that he is incompetent. This month, Purkey also filed a pro se motion for a preliminary injunction barring his execution, which further reflects his mental competency. *See* Motion, *Purkey v. Barr*, No. 2:19-cv-517 (S.D. Ind. July 2, 2020), ECF No. 52.

Purkey's alleged confusion about the reason for scheduling his execution date is constitutionally irrelevant. The Eighth Amendment does not prohibit executing a prisoner who lacks a rational understanding of the reason for scheduling his execution

date. "[T]he sole inquiry for the court remains whether the prisoner can rationally understand the reasons for his *death sentence*." *Madison*, 139 S. Ct. at 728 (emphasis added). Even if Purkey misunderstands why his execution was scheduled, he is still able to rationally understand (and indeed has reportedly said he accepts) that he will be executed for kidnapping, raping, and murdering Jennifer Long.

None of Purkey's other allegations indicate he is unable to rationally understand the reason for his execution. *First*, Purkey alleges that he has "a history of mental illness, trauma, and paranoid delusional thinking." Compl. at 16, ECF No. 1. Even crediting these allegations, they do not establish that he is incapable of rationally understanding the reason for his execution. Indeed, Purkey was found competent to be tried despite those alleged illnesses. *Cf. Ford*, 477 U.S at 425-26 (Powell, J., concurring).

*Second*, Purkey alleges that he has dementia and was diagnosed with Alzheimer's disease. Compl. at 40-45, ECF No. 1. However, while dementia "can cause such disorientation and cognitive decline as to prevent a person from sustaining a rational understanding of why the State wants to execute him," "dementia also has milder forms, which allow a person to preserve that understanding." *Madison*, 139 S. Ct. at 729. Dr. Jonathan DeRight, the neuropsychologist who diagnosed Purkey with Alzheimer's disease, does not opine that Purkey's condition has advanced such that he is unable to understand the reason for his execution. Compl. Ex. 3, ECF No. 1-1.

*Third*, Purkey alleges that his "long-term inability to effectively communicate with counsel is evidence of his present incompetence." Compl. at 46, ECF No. 1. But a

prisoner's competency to be executed does not depend on his ability to assist his counsel. *See Walton v. Johnson*, 440 F.3d 160, 172 (4th Cir. 2006) (en banc); *Coe v. Bell*, 209 F.3d 815, 826 (6th Cir. 2000); *see also Madison*, 139 S. Ct. at 731 ("The sole question on which . . . competency depends is whether [the prisoner] can reach a rational understanding of why the state wants to execute him." (quotation omitted)).

Contrary to Purkey's arguments, his own statements contained in documents attached to his complaint directly contradict his claim of incompetency. Purkey told Dr. Agharkar "that he knew what an execution was and said that he accepted that he was going to be executed for the murder of Jennifer Long." Compl. Ex. 1 at 11, ECF No. 1-1. Furthermore, on May 13, 2019, Purkey filed a handwritten pro se "Petition to Expedite Execution of Petitioner's Death Sentence Pursuant to 28 U.S.C. § 2241" in the Southern District of Indiana. Compl. Ex. 15 at 47, ECF No. 1-18, writing that "[o]n January 23, 2004 U.S. District Judge Gaitan sentenced Purkey to death after a jury found him guilty of kidnapping resulting in death and recommended a sentence of death . . . ." *Id.* at 47-48. These statements indicate that Purkey understands that he was sentenced to death for his crime and possesses a rational understanding of the reason for his execution.

The district court erred in summarily concluding that Purkey has made the required substantial showing of incompetency. Its conclusory analysis—which consists of a single paragraph—solely (1) cites allegations in Purkey's complaint; (2) states that "Plaintiff's counsel submitted a series of reports and declarations regarding Plaintiff's

conditions, which the court credits"; and (3) cites Dr. Agharkar's report. ECF No. 36, at 10. But this does not consist of a substantial showing of incompetency; as detailed herein, neither Dr. Agharkar's statement nor other documents submitted by Purkey come anywhere close to making that showing. There is thus no basis for the district court's finding that Purkey is likely to succeed on the merits of his claims.

### 3. Purkey failed to demonstrate a likelihood of success on the merits of his due process claim

For similar reasons, Purkey did not demonstrate a likelihood of success on his Fifth Amendment due process claim because he is not entitled to any particular process unless and until he makes a substantial threshold showing of incompetency. *Ford* and *Panetti* are clear: No process—including information sharing or discovery—is required until the prisoner has made the substantial threshold showing. *See Panetti*, 551 U.S. at 950 ("Petitioner was entitled to these protections *once he had made a substantial threshold showing of insanity.*") (internal quotation marks omitted; emphasis added). Purkey recognizes as much. *See* Compl. at 55, ECF No. 1 ("*Because* Mr. Purkey has . . . made a substantial showing of his incompetence to be executed, he is entitled to a hearing under Due Process and the Eighth Amendment.") (emphasis added); Motion for Preliminary Injunction at 25, ECF No. 23-1 ("In a *Ford* inquiry, a prisoner *who makes a sufficient threshold showing of incompetency* is entitled to the protection afforded by procedural due process.") (internal quotation marks omitted; emphasis added). Purkey's due process claim thus rises and falls with his *Ford* claim. Because Purkey has not made a substantial

showing of incompetency, he has not demonstrated any denial of his right to procedural due process.

Furthermore, contrary to Purkey's argument that there is no "federal process at all to allow for the adequate review of Mr. Purkey's *Ford* competency claim," Motion at 25, ECF No. 23-1, the appropriate process for adjudicating Purkey's *Ford* claim is a habeas petition under § 2241. If Purkey had filed his *Ford* claim under § 2241, and made a substantial threshold showing of incompetency, he would have available all the due process mandated by *Panetti*, and the additional process potentially available in habeas proceedings. *See* Rules 1(b), 2, 6, and 8 of the Rules Governing Section 2254 Cases in the United States District Courts.

Purkey cannot establish a violation of his due process rights where he never made the threshold showing required to receive process. Accordingly, he has failed to demonstrate that he is likely to succeed on his due process claim.

## B.     The Equities Do Not Support Entry of the Injunction

The injunction is likely to be vacated on appeal because the additional required considerations—likelihood of irreparable harm, the public interest, and the balance of equities—all weigh heavily against further injunctive relief.

The public interest weighs heavily against allowing the injunction entered by the district court to remain in place. The Supreme Court has repeatedly emphasized that the public has "powerful and legitimate interest in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (internal quotation marks omitted), and that "[b]oth

the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (internal quotation marks omitted). The injunction entered in this case cuts against the public interest in timely enforcement of a death sentence, as well as the Supreme Court's admonition that "[l]ast-minute stays should be the extreme exception, not the norm." *Id.* at 1134. The public also has a strong interest in avoiding forum shopping, which the circumstances here are highly suggestive of.

Moreover, "the balance of equities" likewise weigh "strongly in favor of the" government and therefore against the injunction. *Winter*, 555 U.S. at 26. Purkey was convicted of violently kidnapping, raping, and murdering a child—yet he "continue[s] to litigate with a vengeance . . . with the obvious and intended effect of delaying [his execution] indefinitely." *Execution Protocol Cases*, 955 F.3d at 128 (Katsas, J., concurring in part and concurring in the judgment). And this is not one of the rare cases in which the "extreme" remedy of a last-minute stay is justified. *Bucklew*, 139 S. Ct. at 1134.

## II.    THE INJUNCTION SHOULD BE STAYED OR VACATED

The "balance" of the "stay equities" strongly favors a stay or vacatur of the injunction for many of the same reasons that should have barred entry of the injunction in the first place. *San Diegans for Mt. Soledad Nat. War Memorial v. Paulson*, 548 U.S. 1301, 1302 (2006) (Kennedy, J., in chambers) (internal quotation marks omitted). In addition to the factors already discussed, failing to stay or vacate the injunction would cause "severe prejudice" to the government, which is fully prepared to implement the

sentences imposed many years ago in Purkey's case at 7:00 p.m. today. *In re Blodgett*, 502 U.S. 236, 239 (1992) (per curiam). "To unsettle these expectations" in the hours before the execution—particularly after a lengthy delay arising from yet another meritless injunction—would be "to inflict a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the [government] and the victims of crime alike." *Calderon*, 523 U.S. at 556 (citation and internal quotation marks omitted).

More practically, the injunction is intensely disruptive to BOP's preparations for the execution, which have now entered their final stages, including picking up grieving family members of the victims and other witnesses and preparing to transport them to the execution facility, conducting final rehearsals with contractors and execution-team personnel, and increasing security and other precautions in and around the execution facility. See Declaration ¶¶ 4-12, ECF No. 139-1, *In re Bureau of Prisons' Execution Protocol Cases*, 1:19-mc-145 (D.D.C.).

Unlike some state executions, federal executions cannot be rescheduled with relative ease. As BOP has explained in a declaration, the contractors assisting in the executions this week would likely need "at least one month's notice in order to be able to reschedule." Declaration ¶ 6, ECF No. 139-1, *In re Bureau of Prisons' Execution Protocol Cases,* 1:19-mc-145 (D.D.C.). Thus, while it is possible for BOP to conduct Purkey's execution later today or possibly tomorrow if absolutely necessary to facilitate this Court's consideration of the application, the government cannot postpone the execution any further than that without requiring a much more significant delay.

## CONCLUSION

This Court should stay or vacate the district court's preliminary injunction barring Purkey's execution.

Respectfully submitted,

MICHAEL R. SHERWIN
   Acting United States Attorney
   District of Columbia

BRIAN P. CASEY
J. BENTON HURST
DAVID WAGNER
   Assistant United States Attorneys
   Western District of Missouri

BRIAN C. RABBITT
   Acting Assistant Attorney General
   Criminal Division

S/ CHRISTOPHER J. SMITH
CHRISTOPHER J. SMITH
   Attorney
   Appellate Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave. NW
   Suite 1264
   Washington, DC 20530
   (202) 532-4154
   Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1.　This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(a) because it contains 5,179 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.　This motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 14-point typeface using Microsoft Word for Office 365.

s/ CHRISTOPHER J. SMITH
CHRISTOPHER J. SMITH
　　Attorney
　　Appellate Section
　　Criminal Division
　　U.S. Department of Justice
　　950 Pennsylvania Ave. NW
　　Suite 1264
　　Washington, DC 20530
　　(202) 532-4154
　　Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that on July 15, 2020, I electronically filed the foregoing Emergency Motion with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I further certify that, pursuant to D.C. Cir. R. 27(f), counsel communicated by telephone with the Clerk of the Court and with appellee's counsel regarding the need for expedited action on this motion.

S/ CHRISTOPHER J. SMITH
CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave. NW
    Suite 1264
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

# ADDENDUM

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WESLEY I. PURKEY,　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| 　　　　　　Plaintiff,　　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| 　　　v.　　　　　　　　　　　　） | Civil Action No. 1:19-cv-3570 (TSC) |
| 　　　　　　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| WILLIAM P. BARR, *et al.*,　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| 　　　　　　Defendants.　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | |

**ORDER**

Plaintiff Wesley Ira Purkey is 68 years old. As a child, he experienced repeated sexual abuse and molestation by those charged with caring for him. (ECF No. 1, Compl., ¶ 20.) As a young man, he suffered multiple traumatic brain injuries—first in 1968, when he was 16, and again in 1972 and 1976, when he was 20 and 24 respectively. (ECF No. 1-1, Agharkar Report, at 22.) At 14, he was first examined for possible brain damage, and at 18, he was diagnosed with schizophrenic reaction, schizoaffective disorder, and depression superimposed upon a pre-existing antisocial personality. (*Id.* at 5.) At 68, he suffers from progressive dementia, schizophrenia, complex-post traumatic stress disorder, and severe mental illness. (Compl., ¶¶ 14, 21, 24.)

Defendants plan to execute him today, July 15, 2020. (ECF No. 22.)

Purkey seeks to enjoin his execution on two grounds: that he is not currently competent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986) and the Eighth Amendment, and that Attorney General William Barr and Bureau of Prisons Director Michael Carvajal have not afforded him due process in connection with this Eighth Amendment claim. (*See* Compl.,

1

**A1**

¶¶ 109–119.)  Defendants move to dismiss Plaintiff's claims for lack of subject matter jurisdiction[1] and failure to state a claim.  (ECF No. 18, Defs. Mot. to Dismiss.)  In the alternative, Defendants move to transfer all claims that are not dismissed to the United States District Court for the Southern District of Indiana.  (*Id*., at 33–39.)  For the reasons set forth below, the court will DENY Defendants' Motion to Dismiss, GRANT Plaintiff's motion for a preliminary injunction, and ORDER Plaintiff to show cause why this case should not be transferred.

Should the timing of this ruling be raised in subsequent litigation, the court notes that though Defendants have accused the court of "abusive delay," *Barr v. Lee*, No. 20A8 (July 14, 2020), App. for a Stay or Vacatur at 6–7, the court's sole responsibility is to endeavor to address, thoroughly and promptly, the claims of the four individuals whose execution dates were announced by the Government only one month before they were to occur.  The speed with which the government seeks to carry out these executions, and the Supreme Court's prioritization of that pace over additional legal process, makes it considerably more likely that injunctions may issue at the last minute, despite the efforts of Plaintiffs' counsel to raise, and the court to adjudicate, the claims in a timely fashion.

## I.     BACKGROUND

After a hiatus in federal executions of over fifteen years, on July 25, 2019, the U.S. Department of Justice (DOJ) announced plans to execute five inmates who had been sentenced to death under the federal death penalty statute.  *See* Press Release, Dep't of Justice, Federal

---

[1] At the time Defendants moved to dismiss, Plaintiff's execution date had passed, and a new date had not been scheduled.  (Defs. Mot. to Dismiss, at 12.)  Because an execution date has since been scheduled, the court need not address Defendants' claim that because there was no pending execution, the court lacked subject matter jurisdiction.

Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse.  To implement these executions, the Federal Bureau of Prisons (BOP) adopted a new execution protocol: the 2019 Protocol.  *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. November 13, 2019), ECF No. 39-1, at 1021–75.

On November 20, 2019, the court preliminarily enjoined the executions of four inmates: Alfred Bourgeois, Daniel Lewis Lee, Dustin Lee Honken, and Wesley Ira Purkey.  *See id*., ECF No. 50, at 15.  The court found that these Plaintiffs had demonstrated a likelihood of success on the merits of their claims that the 2019 Protocol violates the Federal Death Penalty Act (FDPA), but the court did not rule on their other statutory and constitutional claims.  *Id*., at 13–14.  In April of this year, a divided D.C. Circuit panel vacated the preliminary injunction.  *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 113 (D.C. Cir. 2020), cert. denied sub nom. *Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (June 29, 2020).  The Court based its ruling solely on Plaintiffs' FDPA and APA claims, and noted that "regardless of our disposition, several claims would remain open on remand."  *Execution Protocol Cases*, 955 F.3d at 113 (per curiam).

On June 15, 2020, the DOJ and BOP scheduled a new execution date for Purkey—July 15, 2020.  On July 2, 2020, the Seventh Circuit stayed Purkey's execution, and at the time of this filing, that stay remains in place.  *Purkey v. United States*, No. 19-3318, 2020 WL 3603779 (7th Cir. July 2, 2020).  This court also preliminarily enjoined Purkey's execution, among others, on the grounds that the manner of execution violates the Eighth Amendment.  *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. July 13, 2020), ECF No. 136. The government sought a stay of the injunction at the D.C. Circuit, which was denied.  *See In re*

3

**A3**

*Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5199 (D.C. Cir. July 13, 2020).

Defendants simultaneously sought a stay of the injunction at the United States Supreme Court,

which the Court granted, allowing Mr. Lee to be executed on July 14, 2020. *See Barr v. Lee*, No.

20A8, 2020 WL 3964985 (July 14, 2020) (per curiam). The Supreme Court held that Plaintiffs

had "not established that they are likely to succeed on the merits of their Eighth Amendment

claim." *Id.* at *1–2. Four Justices dissented. *Id.* at *2–3.

## II.       LEGAL STANDARDS

### A. <u>Motion to Dismiss</u>

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal

sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court

does not assess the truth of what is asserted nor "whether a plaintiff has any evidence to back up

what is in the complaint." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation

omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level" and

move plaintiff's claims "across the line from conceivable to plausible." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 554, 555, 570 (2007). Facts that are "merely consistent" with a defendant's

liability do not meet the plausibility standard. *Iqbal*, 556 U.S. at 678 (citation omitted).

The court presumes the truth of a plaintiff's factual allegations, *see Iqbal*, 556 U.S. at

679, and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all

inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471,

**A4**

476 (D.C. Cir. 2012) (citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).).  This presumption does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (the court "do[es] not accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged.").

B. **Preliminary Injunction**

A preliminary injunction is an "extraordinary remedy" that is "never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).  Courts consider four factors on a motion for a preliminary injunction: (1) the likelihood of plaintiff's success on the merits, (2) the threat of irreparable harm to the plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest.  *Id.* at 20 (citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017).  When the government is the opposing party, as is the case here, the third and fourth factors merge.  *See Nken v. Holder*, 556 U.S. 418 (2009).

The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).  It has been suggested, however, that a movant's showing regarding success on the merits "is an independent, free-standing requirement for a preliminary injunction."  *Id.* at 393 (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

**A5**

### III.      ANALYSIS

#### A. <u>Motion to Dismiss</u>

  1. <u>28 U.S.C. § 2241</u>

Defendant contends that Plaintiff raises "core habeas" claims that "must be brought by an action for a writ of habeas corpus under the statute authorizing that writ." *Hill v. McDonough*, 547 U.S. 573, 576 (2006).

  *i. Preemption*

"Federal law opens two main avenues to relief on complaints related to imprisonment," a petition for habeas corpus or a claim under 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). However, when a claim falls within the "core" of habeas, that claim cannot be brought under section 1983, but must instead "yield to the more specific federal habeas statute." *Nelson v. Campbell,* 541 U.S. 637, 643 (2004). Here, Plaintiff opens a third avenue by seeking equitable relief directly under the Constitution, (Compl., ¶ 11), but if that claim is within the "core" of habeas it must also "yield to the more specific federal habeas statute." *See Nelson*, 541 U.S. at 643.

In *Seminole Tribe of Fla. v. Florida*, the Court held: "Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary." 517 U.S. 44, 74 (1996) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). In the habeas corpus context, Congress has provided a remedial scheme under section 2241. Accordingly, the Court in *Preiser v. Rodriguez* found that it would "wholly frustrate explicit congressional intent" if a plaintiff could avoid federal habeas corpus laws "by the simple expedient of putting a different label on their pleadings." 411 U.S. 475, 489–490 (1973). Consistent with Supreme Court

A6

precedent and congressional intent, this court finds that to the extent Plaintiff's claims are within the "core" of habeas, they must be brought under 28 U.S.C. § 2241.

### ii.  Core Habeas

A plaintiff's claims "challenging the fact of his conviction or the duration of his sentence" fall within the "core" of habeas corpus.  *Nelson*, 541 U.S. at 643 (citing *Preiser*, 411 U.S. at 489).  In the death penalty context, the criterion for a core habeas claim is whether "a grant of relief to the inmate would necessarily bar the execution."  *Hill*, 547 U.S. at 583 (2006).  A claim is not core habeas when injunctive relief would not challenge the sentence itself and "the inmate appear[s] willing to concede the existence of an acceptable alternative."  *See id.* at 579 (citing *Nelson*, 541 U.S. at 645–646).

Plaintiff makes two claims for relief under *Ford*: that his execution would violate the Eighth Amendment because he is currently incompetent, and that executing him without providing a hearing to determine his competency would violate the Eighth Amendment and the Due Process Clause of the Fifth Amendment.  (Compl., ¶¶ 108–115.)

Under *Ford*, when a plaintiff claims incompetence, "the only question raised is not *whether*, but *when*, his execution may take place."  *Ford*, 477 U.S. at 425 (emphasis in original) (Powell, J., concurring); *see also Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) (finding that Justice Powell's concurring opinion controls procedure for *Ford* claims).  This temporal question is distinct from "the antecedent question whether petitioner should be executed at all."  *Ford*, 477 U.S. at 425 (Powell, J., concurring).  In fact, Justice Powell noted that incompetence may be temporary, and that a person may be returned to competency in order to carry out his sentence.  *See id.* at n.5.

**A7**

Under this analysis, neither of Plaintiff's *Ford* claims is a core habeas claim.  The first claim is not core habeas because success will not necessarily bar his execution.  As *Ford* makes clear, a claim of incompetence does not affect whether a plaintiff should be executed, but rather when execution would be appropriate.  *See* 477 U.S. at 425 (Powell, J., concurring).  Plaintiff argues that he should be executed when he is competent, not that his execution should be permanently enjoined.  (ECF No. 20, Pl. Opp., at 15.)  Therefore, his claim falls outside the core of habeas because it does not seek to bar his execution or challenge his sentence.  Instead, success on this claim would result in a temporary injunction lasting until Plaintiff's competency is restored.  (*See id*., at 16.)  In acknowledging that he may be rendered competent, Plaintiff appears to concede that an acceptable alternative exists, namely that his sentence can be carried out when he is competent.  (*See id*.)

The second claim is not a core habeas claim because, as the Supreme Court stated in *Hill*, a claim is not core habeas when it seeks only to enjoin the intended manner of execution and "does not challenge the [execution] sentence as a general matter."  547 U.S. at 580.  Plaintiff's second claim challenges the manner of his execution by arguing that due process entitles him to a competency hearing before he can be executed.  (Compl., ¶ 119.)  Success on this claim would not challenge his death sentence but would only provide him a competency hearing.  Again, Plaintiff appears to concede that there is an acceptable alternative—his execution can occur after he is found competent.  (Pl. Opp., at 16.)

2.  Jurisdiction

Because neither of Plaintiff's claims are core habeas claims, this court has jurisdiction to hear them.  A claim that falls outside of the core of habeas corpus does not need to be brought pursuant to section 2241.  *Nelson*, 541 U.S. at 643 ("[C]onstitutional claims that merely

8

**A8**

challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance.")  Plaintiff alleges that if he were to be executed as the government plans, his rights to Due Process under the Eighth and Fifth Amendments would be violated.  (Compl., ¶ 119.) Because this claim is of constitutional dimension and falls outside of the core of habeas, this court is satisfied that subject matter jurisdiction is appropriate under 28 U.S.C. § 1331.  *See Bell v. Hood*, 327 U.S. 678, 681–83 (1946) (holding that federal question jurisdiction is appropriate where a plaintiff brings claims directly under the Constitution and those claims are neither made solely for the purpose of obtaining jurisdiction nor insubstantial and frivolous).

Even if Plaintiff's claims were core habeas, this court would still have jurisdiction.  This is because the jurisdictional requirement that habeas petitioners file in the district of confinement, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447, (2004), "is best understood as a question of personal jurisdiction or venue" not a question of subject matter jurisdiction.  *Id.* at 451 (Kennedy, J., concurring).  Therefore, the requirement "can be waived by the Government," *id.* at 452; and in this case, it was waived.  Fed. R. Civ. P. 12(h)(1)(A) provides that a defense listed in Fed. R. Civ. P. 12(b)(2)–(5) is waived when, as here, it is not raised in a motion to dismiss.  (*See, e.g.*, Defs. Mot. to Dismiss, at 12–21, 33; ECF No. 21, Defs. Reply, at 20 ("venue is proper here").)  In other words, *Padilla,* along with the Federal Rules of Civil Procedure, require that Defendants challenge Plaintiff's claims on jurisdictional grounds, not on Plaintiff's ability to state a claim, yet Defendants only move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and in fact concede the jurisdictional grounds—e.g. that personal jurisdiction and venue are appropriate in this district.

3. Substantial Threshold Showing of Incompetence

**A9**

Separately, Defendants argue that Plaintiff has failed to state a claim because he has not plausibly alleged that he is incompetent. (Defs. Mot. to Dismiss, at 21–28.) Under *Ford*, a Plaintiff must make "a substantial threshold showing of insanity" in order to overcome the presumption of sanity and be afforded a competency hearing. *See Panetti*, 551 U.S. at 949. Specifically, a Plaintiff must make a substantial showing that his "mental illness prevents him from 'rational[ly] understanding' why the State seeks to [execute him]." *Madison v. Alabama*, 586 U.S. __ (2019) (quoting *Panetti*, 551 U.S. at 959). "[T]he issue is whether a 'prisoner's concept of reality' is 'so impair[ed]' that he cannot grasp the execution's 'meaning and purpose' or the 'link between [his] crime and its punishment.'" *Id.* (quoting *Panetti*, 551 U.S. at 960).

Counsel for Plaintiff makes four arguments to show he is incompetent. First, he does not understand that his execution is punishment for his capital crime. (Compl., ¶¶ 21–37.) Second, he has a documented history of mental illness, including delusional and paranoid thinking, starting in childhood and continuing to the present. (Compl., ¶¶ 38–85.) Third, his dementia has caused a decline in his mental health. (Compl., ¶¶ 86–102.) Fourth, his long-term inability to effectively communicate with counsel evinces his incompetence. (Compl., ¶¶ 103–108.) To support each of these arguments, Plaintiff's counsel submitted a series of reports and declarations regarding Plaintiff's conditions, which the court credits. Most notably, Plaintiff provides a report by Dr. Bhushan Agharkar, stating that Plaintiff lacks a rational understanding of the basis for his execution. (Agharkar Report, at 11–12.)

Although Defendants dispute Plaintiff's claim of incompetence, they provided no independent evidence of competence. (Defs. Mot. to Dismiss, at 21–31.) Based on the record before it, the court finds that Plaintiff has made a sufficient showing to survive Defendants' motion to dismiss. Having made a substantial showing of incompetence, Plaintiff is therefore

10

**A10**

entitled to an opportunity to be heard, including a fair hearing.  *See Ford*, 477 U.S. at 425–26 (Powell, J., concurring).

## B. <u>Preliminary Injunction</u>

### 1.  <u>Likelihood of Success on the Merits</u>

Defendants' opposition to Plaintiff's renewed motion for a preliminary injunction restates the arguments made in their motion to dismiss: (1) that Plaintiff's core habeas claims were not properly brought under 28 U.S.C. § 2241 (ECF No. 26, Def. Opp. to Prelim. Inj. at 7–18) and (2) that Plaintiff has not plausibly alleged that he is incompetent.  (Id., at 18–24.)  However, for the reasons explained above, the court has jurisdiction over Plaintiff's claims and Plaintiff has made the substantial threshold showing required by *Ford,* and in doing so, has demonstrated a likelihood of success on his claim for a competency hearing.  Accordingly, the court finds that Plaintiff has satisfied the likelihood of success requirement for a preliminary injunction.

### 2.  <u>Irreparable Harm</u>

In order to prevail on a request for preliminary injunction, irreparable harm "must be certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and it "must be beyond remediation." *League of Women Voters of U.S. v. Newby,* 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (internal quotation marks and brackets omitted).  In *Ford*, Justice Marshall acknowledged that "execution is the most irremediable and unfathomable of penalties."  477 U.S. at 411 (citing *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality opinion).  Here, absent a preliminary injunction, Plaintiff would be executed without being given the opportunity to be heard regarding his competence to suffer such a sentence.  As this court has already found, Plaintiff has made a

**A11**

substantial threshold showing of incompetence.  While Defendants may disagree with the Plaintiff's experts regarding his competence, they do not dispute that irreparable harm is likely. (Def. Opp. to Prelim. Inj., at 18–23, 27–29.)  Based on this record, the court finds that Plaintiff has shown that absent injunctive relief, he will suffer irreparable harm.

   3.   Balance of Equities and Public Interest

Defendants devote one paragraph of their opposition to their argument that the government has an interest in enforcing Plaintiff's sentence.  (Def. Opp. to Prelim. Inj. at 28–29.) It is true that "'[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence.'"  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (quoting *Hill*, 547 U.S. at 584).  The Supreme Court has made clear, however, that executing someone "whose mental illness prevents him from comprehending the reasons for the penalty or its implications" has been considered "abhorrent" for centuries.  *Ford*, 477 U.S. at 417.  "Just because the death penalty is involved is no reason to take shortcuts—indeed, it is a reason not to do so."  *Purkey v. United States*, 2020 WL 3603779, at *11; *see also Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) ("The public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights."); *Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004) ("Confidence in the humane application of the governing laws . . . must be in the public's interest.").  Here, this court seeks to avoid the abhorrent act that the Supreme Court warns against by finding that the equities and the public interest favor Plaintiff.

Considering all these factors, the court finds that a preliminary injunction is warranted.

**A12**

## C. <u>Transfer</u>

Finally, Defendants request that this court transfer all Plaintiff's claims that are not

dismissed to the United States District Court for the Southern District of Indiana.  (Defs. Mot. To

Dismiss at 3; Defs. Reply at 20 (arguing for transfer even though "venue is proper").)  Transfer

is "intended to place discretion in the district court to adjudicate motions for transfer according

to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org.,*

*Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612

(1964)).  A district court considering transfer "must evaluate both the convenience of the parties

and various public-interest considerations."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W.*

*Dist. of Tex.*, 571 U.S. 49, 62 (2013).  In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6

(1981), the Supreme Court detailed public and private interest factors a district court must

consider.  Private-interest factors include the "relative ease of access to sources of proof;

availability of compulsory process for attendance of unwilling, and the cost of obtaining

attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

the action; and all other practical problems that make trial of a case easy, expeditious and

inexpensive."  *Id.* (internal quotation marks omitted).  Public-interest factors include "the

administrative difficulties flowing from court congestion; the local interest in having localized

controversies decided at home; [and] the interest in having the trial of a diversity case in a forum

that is at home with the law."  *Id.* (internal quotation marks omitted).  However, "a plaintiff's

choice [of forum] ordinarily deserves substantial deference."  *Id.* at 242.

In *Starnes v. McGuire*, 512 F.2d 918, 929–933 (D.C. Cir. 1974), the D.C. Circuit

articulated five factors affecting transfer in prisoner petitions: (1) difficulty of communication

with counsel, (2) difficulty of transferring the prisoner (3) availability of witnesses and files (4)

**A13**

whether the petition sounds in habeas corpus, and (5) speed of resolution.  Where a case involves factors weighing both for and against transfer, "the District Court must determine the correct action in light of all the factors."  *Id.* at 933.

Defendants contend that each of the five *Starnes* factors weigh in favor of transfer. (Defs. Mot. to Dismiss at 35–38.)  Plaintiff does not directly address the *Starnes* factors but does suggest that several important witnesses reside in close proximity to this district.  (Pl. Opp. at 34–35.)  The court is mindful of Defendants' concerns regarding convenience.  However, because transfer is discretionary and Plaintiff's choice of forum is entitled to substantial deference, the court will order Plaintiff to show cause why this case should not be transferred to the United States District Court for the Southern District of Indiana.

## IV.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is hereby DENIED and Plaintiff's motion for a preliminary injunction is hereby GRANTED.  It is further ORDERED that Defendants (along with their respective successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with them) are enjoined from executing Plaintiff Wesley Ira Purkey until further order of this court.

It is further ordered that Plaintiff must SHOW CAUSE, no later than July 31, 2020, why this case should not be transferred to the United States District Court for the Southern District of Indiana.

Date:  July 15, 2020


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge


14

**A14**