**ORAL ARGUMENT NOT YET SCHEDULED**
No. 20-5207

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

WESLEY I. PURKEY,

Plaintiff-Appellant,

v.

WILLIAM P. BARR, ET AL.,

Defendant-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA, D. CT. NO. 1:19-CV-3570 (HON. TANYA S.
CHUTKAN)

## PLAINTIFF-APPELLEE'S OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION TO STAY OR VACATE PRELIMINARY INJUNCTION

Charles F.B. McAleer, Jr. (DC Bar #388681)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com

Michelle M. Law, MO Bar No. 45487
(appointment motion to be filed)
Assistant Federal Public Defender
Western District of Missouri
901 Saint Louis Street, Suite 801
Springfield, Missouri 65806
Telephone: (417) 873-9022
Facsimile: (417) 873-9038
Email: michelle_law@fd.org

Brian Fleming (DC Bar #974889)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5871
Email: bfleming@milchev.com

Rebecca E. Woodman (*pro hac vice*)
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
Telephone: (785) 979-3672
Email: rewlaw@outlook.com

July 15, 2020

*Counsel for Plaintiff-Appellant*

**INTRODUCTION**

Mr. Wesley Purkey is a 68-year-old man suffering from progressive dementia, schizophrenia, complex-Post Traumatic Stress Disorder ("PTSD"), and severe mental illness including significant delusions and paranoia, rendering him unable to comprehend the reason for his execution and thus entitled to process on the issue of his competency to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). Almost nine months ago, Mr. Purkey initiated an action pursuant to *Ford* and 18 U.S.C. § 3596(c), arguing that he was incompetent to be executed and proffering extensive evidence of his incompetence. This evidence, consisting of declarations and reports from counsel and medical experts, as well as through relevant records, demonstrated Mr. Purkey's cognitive deterioration, memory loss, paranoia, confusion, and delusion.

The court below granted a preliminary injunction, crediting that evidence and finding that Mr. Purkey had satisfied the "substantial threshold showing required by *Ford*, and in doing so, has demonstrated a likelihood of success on his claim for a competency hearing." Order at 11, ECF No. 36. Defendants seek to vacate the injunction, and avoid the judicial review and process owed to Mr. Purkey under *Ford.* The issue before the Court at this time is not whether the district court's ruling was correct—it is because it simply follows settled Supreme Court precedent. Rather, the question is whether, despite Defendants' obstructionist

- 1 -

behavior in the district court and attempt to rush this serious competency claim through to execution without meaningful review, the balance of the equities cuts so strongly in its favor that this Court should allow the Government to short-circuit a significant and indisputably timely Constitutional claim altogether by vacating the preliminary injunction. The answer is clearly no. As a matter of settled law, Plaintiff is entitled to such process review and, without it, his execution would violate the United States Constitution. Defendants have not come close to carrying the "heavy burden" necessary to justify a stay.

## BACKGROUND

On November 26, 2019, Mr. Purkey initiated this action in the D.C. District Court, including extensive factual allegations and evidentiary support, challenging the constitutionality of his execution during his period of incompetency pursuant to *Ford*. *See* Complaint, ECF No. 1. Mr. Purkey's *Ford* civil complaint did not challenge his conviction or sentence but, rather, his current competency to be executed and the failure of Defendants to effectuate *any* process under *Ford*. In addition, Mr. Purkey's complaint challenged the complete lack of process in <u>federal</u> *Ford* determinations. *See* Complaint ¶¶ 118–21, ECF No. 1; Purkey's Opp'n to MTD at 7–10, ECF No. 20; Plaintiff's Reply in Support of Plaintiff's Renewed Motion for a Preliminary Injunction at 2, ECF No. 29 at 16–17 (comparing the lack of any federal *Ford* procedure with the many state procedures

in states that recognize the death penalty). Mr. Purkey first filed this *Ford* complaint when a warrant issued scheduling his execution because a competency to be executed claim is not ripe until execution is imminent. *See Panetti*, 551 U.S. at 947 (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998)).

Mr. Purkey is also a plaintiff in a related case in the D.C. District Court that challenged the constitutionality of the Government's proposed lethal injection protocol. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TSC (D.D.C. Aug. 20. 2019) (the "Protocol case"). On November 20, 2019, the D.C. District Court entered a preliminary injunction in the Protocol case, preventing Mr. Purkey's December 13, 2019 execution date. On December 4, 2019, Mr. Purkey filed a parallel protective Motion for a Preliminary Injunction (ECF No. 7) in his *Ford* case out of an abundance of caution to ensure he would not be executed while incompetent if the Protocol Case injunction was lifted. On December 17, 2020, after the initial execution warrant had expired, and after Defendants had filed an opposition to Mr. Purkey's Preliminary Injunction Motion (ECF No.10), Mr. Purkey filed a Motion to Withdraw the protective Motion for Preliminary Injunction, agreeing with the Government that since his execution was no longer imminent, the preliminary injunction motion was no longer ripe. *See* Mot. to Withdraw, ECF No. 11. On December 31, 2019, the D.C. District Court granted the motion to withdraw and *sua sponte* ordered Mr. Purkey to respond to

jurisdictional arguments raised in the Government's Opposition to Mr. Purkey's preliminary injunction motion, including argument relating to the court's jurisdiction over a civil rights *Ford* claim brought outside habeas. The parties completed briefing on January 28, 2020. ECF Nos. 14–17. Defendants then filed a Motion to Dismiss or, in the alternative, to Transfer to the Southern District of Indiana, where Mr. Purkey is incarcerated. Defendants' motion to dismiss or transfer was fully briefed. ECF Nos. 18–21. Throughout this period and before, Plaintiffs diligently sought Mr. Purkey's medical and other records from Defendants to assist his expert in preparing reports about Mr. Purkey's competency. App. A, ECF No. 30-1. The Government refused throughout this period to provide any information, largely ignoring Mr. Purkey's requests.

On April 7, 2020, the preliminary injunction issued in the Protocol Case was vacated by the D.C. Circuit. *See* Judgment*, FBOP Execution Protocol Cases*, No. 19-5322 (D.C. Cir. Apr. 7, 2020). On June 15, 2020, the next business day after the issuance of the mandate in connection with that D.C. Circuit litigation, Attorney General Barr issued another warrant for Mr. Purkey's execution with only 30 days' notice, setting his execution date for July 15, 2020. This was done despite Mr. Purkey's unresolved and substantiated *Ford* claim, a lack of promulgated federal *Ford* procedures in any form (draft or otherwise), a global pandemic that caused USP Terre Haute, where Mr. Purkey is located, to prohibit visitations, and

documented COVID-19 cases in the prison. At the time the new warrant was issued, neither the Attorney General nor BOP had promulgated any procedures to ensure critical visitors could consult with Mr. Purkey safely without unnecessary risk of exposure to the deadly virus known to be present inside the prison. R. Woodman Decl. ¶¶ 37–38, ECF No. 23-6.

Due to the imminence of the newly issued execution warrant and Defendants' continued delay and refusal to provide Mr. Purkey relevant materials related to his *Ford* claim, as described further herein, on June 22, 2020, Mr. Purkey moved the D.C. District Court for a renewed preliminary injunction of the scheduled execution in order to ensure he receives (a) a fair hearing on the issue of his competency to be executed; (b) a determination of his competency *vel non* to be executed; and (c) the completion of expedited discovery in advance of a *Ford* hearing. Pl.'s Renewed Mot. for a Prelim. Inj. Barring Execution of Wesley Purkey Pending Final Disposition on the Merits 1–2, ECF No. 23. On June 23, 2020, Mr. Purkey filed a motion for expedited discovery, seeking information relevant to his *Ford* claim that is in the sole possession and control of Defendants and which he has long been denied. Pl.'s Mot. for Expedited Disc., ECF No. 24.

After months of briefing due to Defendants' dogged refusal to provide Mr. Purkey process or a decision on the merits, at 5:09 A.M this morning, the district court issued its ruling, enjoining Mr. Purkey's scheduled execution today.

**ARGUMENT**

A stay pending appeal is available "only under extraordinary circumstances," and the "district court's conclusion that a stay is unwarranted is entitled to considerable deference." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers). The Government has not carried its "heavy burden" to justify such relief here, *id.*, as (1) it has not "made a strong showing that [it] is likely to succeed" in challenging the injunction on appeal; (2) it will not "be irreparably injured absent a stay"; (3) a stay would substantially and irreparably injure Plaintiffs; and (4) a stay is not in the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## I. DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS

The district court correctly held that Mr. Purkey is likely to prevail on his claims. The court found that, because Mr. Purkey's claim is of constitutional dimension and falls outside the core of habeas, jurisdiction is appropriate under 28 U.S.C. § 1331. Order at 9, ECF No. 36. Even if the claims were core habeas, the court found that it would still have jurisdiction because "the question of personal jurisdiction or venue" was not raised by the Government in their motion to dismiss and was therefore waived. *Id*. The court also correctly found that "Plaintiff has made the substantial threshold showing required by *Ford*, and in doing so, has

demonstrated a likelihood of success on his claim for a competency hearing." *Id.* at 11.

**A.  The District Court Properly Found That It Has Jurisdiction to Hear Mr. Purkey's Claims**

The district court correctly found that claims pursuant to *Ford* are not traditional "core habeas" claims required to be brought under 28 U.S.C. § 2241. Order at 7, ECF No. 36. In a capital case, the test for whether a claim is within the bounds of "core habeas" is whether it would permanently prevent his execution. Clearly established Supreme Court precedent shows that this case is outside that core because "[u]nder *Ford*, when a plaintiff claims incompetence, 'the only question raised is not whether, but when, his execution may take place.' This temporal question is distinct from 'the antecedent question whether petitioner should be executed at all.'" *Id.* (citing *Ford*, 477 U.S. at 425 (internal citations omitted)); *see also Stanley v. Davis*, No. 07-cv-4727, 2015 WL 435077, at *4 n.4, *5 (N.D. Cal. Feb. 2, 2015) (it is "difficult to discern a meaningful difference between a *Ford* challenge and a methods challenge. . . .[which] may be brought under section 1983."); *Ward v. Hutchinson*, 558 S.W.3d 856 (Ark. 2018) (a state prisoner sought declaratory and injunctive relief in a civil rights action under 42 U.S.C. § 1983 challenging, in part, his competency to be executed); *Hubbard v. Campbell*, 379 F.3d 1245, 1247–48 (11th Cir. 2004) (Barkett, J., dissenting) (a civil rights action is an appropriate vehicle to raise a *Ford* claim because it does

not challenge the fact or validity of the sentence, only the constitutionality of the execution at a specific temporal point of incompetency, an issue not reached by the majority).

A "core habeas" is one in which "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477 (1994). In such cases, a civil rights action is not an available remedy. "But if . . . the plaintiff's action, even if successful, will not demonstrate the invalidity of [his conviction or sentence], the [§ 1983] action should be allowed to proceed . . . ." *Skinner v. Switzer*, 131 S. Ct. 1289, 1298 (2011) (quoting *Heck v. Humphrey*, 512 U.S. at 487); *see also Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. Nov. 29, 2006) (action to obtain DNA appropriate pursuant to § 1983 because "such access would not imply the invalidity of his conviction" even if it may eventually lead to such a claim)).

It is clear that where a prisoner seeks injunctive relief that "would not necessarily bar the inmate's execution," the challenge is not limited to habeas because the challenge does not seek to establish "unlawfulness [that] would render a conviction or sentence invalid." *Hill v. McDonough*, 547 U.S. 573, 574 (2006) (citations omitted); *Nelson v. Campbell*, 541 U.S. 637, 643–44 (2004) (citations omitted) (allowing a challenge to the method of execution outside of habeas because it did "not directly call into question the 'fact' or 'validity' of the sentence

itself"). This is true even if the challenge would "frustrate an execution as a practical matter." *Hill*, 547 U.S. at 574 (explicitly rejecting an amici argument that any "challenge that would frustrate an execution as a practical matter must proceed in habeas.").

As Mr. Purkey emphasized in his renewed motion for preliminary injunction (ECF No. 23) and the district court correctly observed in granting it, *Ford* "noted that incompetence may be temporary, and that a person may be returned to competency in order to carry out his sentence." *Ford*, 477 U.S. at 425 n.5 (Powell, J., concurring). It is a well-settled principle that competency is not inherently static and may be restored—a concept that Defendants continue to ignore and refuse to disclaim even though the Government is a vocal advocate of that principle. *See Indiana v. Edwards*, 554 U.S. 164, 175 (2008) ("[Competency] varies in degree. [Competency] can vary over time. [Competency] interferes with an individual's functioning at different times in different ways."); *Davis v. Kelley*, 854 F.3d 967, 971 (8th Cir. 2017) ("competency can be lost or regained over time" in the context of *Ford*); *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015) ("[C]ompetency is not static and may change over even a short period of time[.]") (internal quotation marks omitted); *United States v. Grape*, 549 F.3d 591, 597–98 (3d Cir. 2008) (the Government could restore competency by medicating currently incompetent defendant who became mentally ill in prison); *Singleton v. Norris*,

319 F.3d 1018, 1026 (8th Cir. 2003) (upholding the state's forced medication of a prisoner to restore him to competency); *Commonwealth v. Sam*, 952 A.2d 565, 582 (Pa. 2008) (allowing involuntary medical intervention to restore an inmate to competency); Pl.'s Reply to Defs.' Resp. to Mr. Purkey's Br. Filed Pursuant to this Court's Order of Dec. 31, 2019 at 3 n.1, ECF No. 17 ("Nearly all death penalty jurisdictions that have implemented procedures that govern *Ford* claims include provisions for restoring competency.").

Notably, as the district court found, Defendants do not contest the court's jurisdiction as to Mr. Purkey's process challenge. *See* Order at 8, ECF No. 36. "Plaintiff's second claim challenges the manner of his execution by arguing that due process entitles him to a competency hearing before he can be executed. Compl. ¶ 119, ECF No. 1. Success on this claim would not challenge his death sentence but would only provide him a competency hearing. Again, Defendants appear to concede that there is an acceptable alternative—his execution can occur after he is found competent. Pl.'s Opp'n to MTD at 15–16, ECF No. 20.

Finally, the district court determined that, even if it could be said that Mr. Purkey's claims were "core habeas", the court would still have jurisdiction because the requirement that habeas petitioners file in the district of confinement "'is a question of personal jurisdiction or venue not a question of subject matter jurisdiction.'" Order at 9, ECF No. 36 (citing *Rumsfeld v. Padilla*, 542 U.S. 426,

447, 451 (Kennedy, J., concurring)). Because Defendants conceded that personal jurisdiction and venue were appropriate in the D.C. District Court and only moved to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), the Government waived that requirement. *Id*.

When the Court reaches the merits after full briefing, it is much more likely that it will affirm the district court in its correct application of clearly established precedent. The Government cannot satisfy its "heavy burden" to justify a stay of execution.

**B.     The District Court Properly Found That Mr. Purkey Met *Panetti*'s Threshold Showing of Incompetence**

The district court correctly found that Mr. Purkey "made a substantial showing of incompetence" and was thus "entitled to an opportunity to be heard, including a fair hearing." Order at 10–11, ECF No. 36 (citing *Ford*, 477 U.S. at 425–26 (Powell, J., concurring)). In making this determination, the district court credited the extensive evidence submitted by Mr. Purkey in support of his incompetence and concluded 1) that Mr. Purkey "does not understand that his execution is punishment for his capital crime"; 2) that "he has a documented history of mental illness, including delusional and paranoid thinking, starting in childhood and continuing to the present"; 3) that "his dementia has caused a decline in his mental health"; and 4) that "his long-term inability to communicate with counsel evinces his incompetence." Order at 10, ECF No. 36. The Court also

credited the report by Dr. Bhushan Agharkar concluding that Mr. Purkey lacks a rational understanding of the basis for his execution. *Id*. (citing Agharkar Report, at 11–12, Complaint, Ex. 1, ECF No. 1-1.) Further, the Court observed that, while Defendants disputed Mr. Purkey's claim of incompetence, they provided no independent evidence of competence. Order at 10, ECF No. 36. Having met the substantial threshold showing, the district court correctly found that Mr. Purkey "has demonstrated a likelihood of success on his claim for a competency hearing." *Id.* at 11.

Defendants advance the same arguments here that were unavailing in the court below, and these arguments must again fail. *See* Mot. to Dismiss at 21–25, 29, ECF No. 18. As the district court recognized, Mr. Purkey has submitted substantial and reliable evidence of his progressive dementia, schizophrenia, delusions, and paranoia, including through numerous declarations and reports from counsel, defense team members, and multiple medical experts, as well as through medical testing results, medical records, and other relevant documents. Compl., ECF Nos. 1 to 1-52; Pl.'s Renewed Mot. for Prelim. Inj. & Supporting Documents, ECF Nos. 23 to 23-7. Defendants attack Dr. Agharkar's expert conclusions based solely on their layperson, uninformed understanding of mental health. Defendants argue that Mr. Purkey's lack of rational understanding for his execution is really a

lack of understanding of the reason for scheduling his execution, but as the district court observed, this is not "independent evidence of competence." Order at 10, ECF No. 36. Further, any factual disputes raised by Defendants, even if they were valid—which they are not—support the district court's finding that a hearing is warranted.

*Ford* and *Panetti* make clear that once a prisoner has made a "substantial threshold showing of insanity" he is entitled to "the protection afforded by procedural due process," including a hearing at which to present evidence on the ultimate issue of competency. *See Panetti*, 551 U.S. at 949. *Panetti* explains the substance of these procedures, emanating from Justice Powell's controlling opinion in *Ford* setting out the *minimum* procedures for competency determinations:

> [I]f the Constitution renders the fact or timing of [the condemned prisoner's] execution contingent upon establishment of a further fact, then that fact must be determined with the high regard for truth that befits a decision affecting the life or death of a human being. Thus, the ascertainment of a prisoner's sanity as a predicate to lawful execution calls for no less stringent standards than those demanded in any other aspect of a capital proceeding.

*Panetti*, 551 U.S. at 948–49 (quoting *Ford*, 477 U.S. at 411–12). A "fair hearing" is necessary under *Panetti* and *Ford* because there are facts that must be established at the time of, or shortly before, an execution date to determine if sanity is an issue. *Panetti*, 551 U.S. at 948–49 (quoting *Ford*, 477 U.S. at 426). The

fact of the condemned person's sanity is the necessary predicate for the retributive justification of death as a punishment. *Id.* Without this, the punishment becomes indefensible. This critical constitutional inquiry must be subject to the adversarial process and judicial scrutiny.

Notably, Mr. Purkey made this substantial threshold showing despite Defendants' significant interference with his attempts to gather critical evidence. The Government's refusal to honor Mr. Purkey's repeated requests over the past nine months for medical and mental health records, surveillance video from his cell, and access to medical testing, as well as the interference with access to visitations because of the COVID-19 pandemic, has deprived him of expert and legal assistance and the opportunity to review and submit additional relevant evidence of his incompetency.

With no authority, Defendants argue that a failure to meet the threshold showing entitles a prisoner to "no process –including information sharing." ECF No. 39 at 16. Neither *Panetti* nor *Ford* stands for the proposition that the government may obstruct a prisoner's access to his own counsel and medical records and then complain that the prisoner has failed to demonstrate current incompetency. *Panetti* and *Ford* are premised on the opposite assumption: that counsel will have access to their client in making a substantial threshold showing. In *Ford*, counsel relied on, *inter alia*, the inmate's medical records that showed a

pattern of deterioration into a paranoid psychosis. Ford, 477 at 402. In *Panetti*, counsel and a psychiatrist were able to meet with Panetti on the eve of his execution to corroborate the apparent illness as described by prison staff. *Panetti*, 551 U.S. at 940-42. In neither case did the state seek a litigation advantage by depriving counsel of information about their client.

That is what Defendants attempted to do here. Mr. Purkey's counsel requested his medical records for months, complying with every procedural mechanism and rule Defendants put forth. To date, Defendants have failed to produce any of Mr. Purkey's updated records despite repeated requests, nor have his experts been able to conduct necessary in-person examinations. The brain scans that Mr. Purkey requested for months took place only last week, and Defendants' representation that they sent "counsel the reports and original imaging from Purkey's most recent medical scans" is misleading at best. ECF No. 39 at 5. In fact, despite being informed by BOP that the requested scans and imaging were conducted on or after July 8, 2020 and that one of Mr. Purkey's experts would receive those scans and imaging from BOP by July 11, 2020, the expert did not receive them until July 14, 2020, *i.e.*, the day before the Mr. Purkey's scheduled execution. He has yet to receive the EEG results.

Critically, five minutes before this filing, Mr. Purkey's counsel learned that the Government appears to have had scientific confirmation in their possession of

significant structural abnormalities in Mr. Purkey's brain that are consistent with cognitive impairment such as vascular dementia or other conditions. Access to this testing had been requested by Plaintiff for months, and arbitrarily denied by Defendants. Defendants reversed course last week, and permitted the testing at the expense of the Mr. Purkey's team. Even though the testing was paid for and requested by Plaintiff's counsel and their experts, the results were initially delivered only to the Government, last week. The Government provided reports based on this data late last week, but did not deliver the underlying scans to Mr. Purkey's expert until yesterday. Although Plaintiff's expert has not been able to verify the extent of the atrophy and damage to Plaintiff's brain through the actual scans, the reports themselves make clear that significant abnormalities exists.

## II. DEFENDANTS WILL NOT BE IRREPARABLY HARMED BY THE PRELIMINARY INJUNCTION

Defendants have not shown that they would be harmed—much less irreparably so—absent a stay. Defendants complain that their "significant advanced planning and coordination" will be frustrated. Defs.' Mot. to Stay Prelim. Inj. Pending Appeal at 6, ECF No. 39. But Defendants created this situation when they filed a truncated execution warrant while Mr. Purkey diligently sought to

litigate his claim. Any scheduling inconveniences for Defendants are of their own

making and fail to rise to the level of irreparable harm.[1]

## III. PLAINTIFF WILL BE IRREPARABLY HARMED BY A STAY OF THE INJUNCTION

Plaintiff, by contrast, would suffer irreparable harm of the highest order if

the preliminary injunction is stayed. As the district court observed, "[i]n Ford,

Justice Marshall acknowledged that 'execution is the most irremediable and

unfathomable of penalties.' 477 U.S. at 411 (*citing Woodson v. North Carolina*,

428 U.S. 280, 305 (1976) (plurality opinion)." Order at 11, ECF No. 36. As the

district court correctly found, "absent a preliminary injunction, Plaintiff would be

executed without being given the opportunity to be heard regarding his competence

to suffer such a sentence" having "made a substantial threshold showing of

innocence." *Id.* at 11–12. Importantly, the district court noted that Defendants "do

not dispute that irreparable harm is likely." *Id.* at 12.

## IV. A STAY IS NOT IN THE PUBLIC INTEREST

The balance of the equities and public interest also favor a stay. Where the

Government opposes a stay, these two factors merge. *See Nken*, 556 U.S. at 434–

35. This Court has an interest in granting a stay in order "to protect the Court's

---

[1] Counsel object to Defendants' proposition that they can execute him "later today or possibly tomorrow." According to the regulation, Mr. Purkey's warrant has been issued for a specific "date"—i.e., today. Defendants' suggestion appears to contravene the regulation. ECF No. 39 at 19.

jurisdiction over the case, for if the inmate was executed while the competency question was pending, the case would become moot even if it later appeared that the inmate clearly was incompetent." *Smith ex rel. Smith v. Armontrout*, 626 F. Supp. 936, 939 n.1 (W.D. Mo. 1986). A cognizable *Ford* claim presents important constitutional questions courts must approach with "deliberate and thoughtful" consideration, for "a ripe *Ford* claim is due the same consideration as other issues raised in a first habeas petition." *Amaya-Ruiz v. Stewart*, 136 F. Supp. 2d 1014, 1030–31 (D. Ariz. 2001) (granting stay of execution pending resolution of *Ford* claim). A stay in this matter to ensure an incompetent person is not executed in violation of the U.S. Constitution:

> will not substantially harm the government, which has waited at least seven years to move forward on Purkey's case. . . . the public interest is surely served by treating this case with the same time for consideration and deliberation that we would give any case. Just because the death penalty is involved is no reason to take short-cuts— indeed, it is a reason not to do so.

Notice of Recent Decision, Ex. A at 26–27, ECF No. 31-1.

Other courts have found "little potential for injury" as a result of a delayed execution date. *See*, *e.g.*, *Harris v. Johnson*, 323 F. Supp. 2d 797, 809 (S.D. Tex. 2004). Any potential harm to the Government caused by a delayed execution is outweighed by the obvious harm to Mr. Purkey and the public's interest in a constitutional application executions. Not delaying the execution undermines the

rule of law as pronounced by *Ford* and *Panetti*—that we as a society do not execute the incompetent.

Further, the only delays in this matter have been caused by Defendants. Since August 2019, despite repeated requests and efforts by Mr. Purkey's counsel, Defendants have continuously refused to provide his medical, mental health, and administrative records or, to furnish (or possibly even preserve) video evidence depicting Mr. Purkey's dementia, all of which is integral to Mr. Purkey's claim. *See generally e.g.*, R. Woodman Decl., ECF No. 23-6; Pl.'s Mot. For Expedited Disc., ECF No. 24; Reply in Supp. of Pl.'s Mot. For Expedited Disc. & App. A, ECF Nos. 30, 30-1. Additionally, due to the COVID-19 pandemic, BOP has precluded all visitors into USP Terre Haute beginning March 13, 2020, and now is only allowing visitors for prisoners with execution dates. *See* E. Vartkessian Suppl. Decl. at 2, ECF No. 23-5. USP Terre Haute has documented cases of COVID-19 and at least one COVID-related death. Any alleged concern about the victims rings hollow given Defendants' choice to recklessly execute Mr. Purkey during a global pandemic with minimal safety procedures in place, putting the victim's family in a position to choose between attending the execution (as is their right) and risking their health and safety (and possibly their lives). BOP still has released only cursory guidance on keeping visitors safe and have refused to provide meaningful

information related testing, ventilation, and other necessary procedures to keep visitors safe. R. Woodman Decl. ¶¶ 33–38, ECF No. 23-6.

By contrast, Mr. Purkey has acted diligently and expediently to protect his constitutional rights. This case falls into a category of cases where filing is not ripe until execution is imminent. *See Panetti*, 551 U.S. at 947 (citing *Stewart v. Martinez-Villareal,* 523 U.S. 637, 644–45 (1998) (a competency to be executed claim is not ripe until it is time to execute the sentence)). Mr. Purkey's status has declined over the years, including in the months and weeks leading up to his initial execution date, and has declined even more since. E. Vartkessian Suppl. Decl. ¶¶ 5–21, ECF No. 23-5; R. Woodman Decl. ¶¶ 14–23, ECF No. 23-6. It is due to this decline, Mr. Purkey's current mental incompetency, and the imposition of the sentence, that the case is properly before the district court.

Even where Defendants have a "strong interest in enforcing its criminal judgments," that interest is outweighed by the public's interest in a "humane and constitutional" application of the federal execution protocol. *Nooner v. Norris*, No. 5:06CV00110 SWW, 2006 WL 8445125, at *4 (E.D. Ark. June 26, 2006). Mr. Purkey does not contest his conviction or the sentence of death. He contests only the unconstitutional way in which the Government proposes to execute him in his current condition of incompetency. In any event, "the fact that the government has not—until now—sought to" schedule Mr. Purkey's execution

"undermines any urgency surrounding" its need to carry out Mr. Purkey's sentence. *Osorio-Martinez v. Attorney Gen. of the U.S.*, 893 F.3d 153, 179 (3d Cir. 2018). The preliminary injunction will therefore "not substantially injure other interested parties," the public, or the Government. *Chaplaincy*, 454 F.3d at 297.

And, the COVID-19 pandemic inescapably impacts what can be considered a humane and constitutional execution. Based on Mr. Purkey's deteriorating condition, it is very likely that Mr. Purkey's competency has only continued to decline. But Mr. Purkey's counsel has been unable to assess this without access to in-person visits with her client. R. Woodman Decl. ¶¶ 33–38, ECF No. 23-6; E. Vartkessian Suppl. Decl. ¶¶ 22–25, ECF No. 23-5. Further, the lack of access to one of the only forms of contact with the outside world has itself likely exacerbated his serious mental illness and deteriorating mental capacity. E. Vartkessian Suppl. Decl. ¶ 25, ECF No. 23-5. Even if BOP begins to permit visits, Mr. Purkey's legal counsel, expert witnesses, and others will need to risk their lives to save Mr. Purkey's. It is not in the public interest to subject citizens to undue and unnecessary health hazards.[2]

---

[2] Appellate state courts have stayed several executions in light of the COVID-19 pandemic. *See* ECF No. 23 at 36 n.6.

Finally, it is clearly not in the public interest to execute an incompetent person. The public interest is not served by executing an individual presenting a *prima facie* case of incompetency before he has the opportunity to avail himself of the legitimate procedures to challenge his competence, as required by clearly existing United States Supreme Court authority. Accordingly, the public interest is only served by preliminarily enjoining Mr. Purkey's execution because it will allow for the equal application of the law in judicial processes.

The public interest lies in ensuring that Defendants comply with the Constitution and the laws Congress enacted.

## CONCLUSION

The motion for a stay pending appeal should be denied.

DATED: July 15, 2020

Respectfully Submitted,

*/s/Charles F.B. McAleer, Jr.*
Charles F.B. McAleer, Jr. (DC Bar #388681)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com

*/s/Brian Fleming*
Brian Fleming (DC Bar #974889)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5871
Email: bfleming@milchev.com

*/s/Rebecca E. Woodman*
Rebecca E. Woodman (*pro hac vice*)
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
Telephone: (785) 979-3672
Email: rewlaw@outlook.com

Michelle M. Law, MO Bar No. 45487
(appointment motion to be filed)
Assistant Federal Public Defender
Western District of Missouri
901 Saint Louis Street, Suite 801
Springfield, Missouri 65806
Telephone: (417) 873-9022
Facsimile: (417) 873-9038
Email: michelle_law@fd.org

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1.　Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 5183 words.

2.　The brief has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*/s/Charles F.B. McAleer, Jr.*
Charles F.B. McAleer, Jr. (DC Bar #388681)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.  With the exceptions noted below, counsel for parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/Charles F.B. McAleer, Jr.*
Charles F.B. McAleer, Jr. (DC Bar #388681)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com