# In the United States Court of Appeals for the District of Columbia Circuit

WESLEY I. PURKEY,
PLAINTIFF-APPELLEE,

V.

WILLIAM P. BARR, ET AL.,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, D. CT. NO. 1:19-CV-3570 (HON. TANYA S. CHUTKAN)

## REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY OR VACATE PRELIMINARY INJUNCTION BARRING EXECUTION OF WESLEY PURKEY

MICHAEL R. SHERWIN
    Acting United States Attorney
    District of Columbia

BRIAN P. CASEY
J. BENTON HURST
DAVID WAGNER
    Assistant United States Attorneys
    Western District of Missouri

BRIAN C. RABBITT
    Acting Assistant Attorney General
    Criminal Division

CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave. NW
    Suite 1264
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov

All agree that Purkey could have brought his current claims as part of the application for habeas corpus relief he filed in the Southern District of Indiana soon after his execution date was first scheduled last year. Purkey made a different choice. After seeing the district court in the Southern District of Indiana deny his application for habeas relief on other claims, and seeing the district court in the District of Columbia grant a stay of his execution date in unrelated litigation concerning a challenge to the federal execution protocols, Purkey chose to instead file this case in the District of Columbia, asserting a never-before-recognized cause of action that he asked the district court to infer directly from the Constitution itself.

At 5:00 a.m. this morning, the district court rewarded Purkey for that choice. It held that he is likely to succeed in showing that the Constitution contains an unwritten and previously unknown cause of action that supplants the application for a writ of habeas corpus in 28 U.S.C. § 2241 for prisoners asserting claims under *Ford v. Wainwright*, 477 U.S. 399 (1986), allowing them to bring suit in a forum of their choosing from the district of their confinement. And the court went on, in just a few short sentences of analysis, to conclude that Purkey is likely to *prevail* on that cause of action— even though Purkey's own expert, in a declaration attached to his own complaint, acknowledged that Purkey "accept[s] that he is going to be executed for the murder of Jennifer Long." ECF No. 1-1, at 12.

As the government explained in its application, this Court should not allow that decision to stand. Purkey never addresses the Supreme Court's admonitions that

1

"[w]here Congress has created a remedial scheme for the enforcement of a particular federal right," it would be inappropriate "to supplement that scheme with one created by the judiciary." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996). Because Purkey does not dispute that he could have brought his *Ford* claim in habeas, that principle is dispositive here. And even if courts were free to invent unwritten constitutional causes of action for the pursuit of non-"core" habeas claims, as the district court's decision implicitly assumed, Purkey has not shown that the claims here would qualify: Purkey argues under *Ford* that he is incompetent to be executed and thus the government is barred from executing him under current law. His claim is therefore properly treated as a postconviction habeas claim.

Even if Purkey *had* brought his claim in the appropriate fashion, though, it would have had no substantial likelihood of success (which perhaps explains his procedural choice). Purkey's submissions below, and the district court's cursory "analysis" of them, do not establish a threshold showing of incompetence. Purkey offers no meaningful defense of the district court's conclusory assertions, but instead simply doubles down on them.

Finally, Purkey unfairly faults the government for not providing discovery to which he is not entitled, and tries to turn the government's recent voluntary accommodation of his request into an affirmative reason to further delay the execution. That argument, too, lacks merit. A prisoner who has not filed a proper

claim in a proper court and made a proper showing cannot hold up an execution indefinitely simply to seek more evidence that might support his (nonactionable) claims.

As the government's motion explained, Mot. 7, where Congress has provided a "remedial scheme for the enforcement of a particular right," it would be inappropriate for courts to "supplement that scheme" by inferring new, unwritten causes of action. *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 74 (1996); *see Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("'Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.'") (citation omitted). Here, Purkey does not dispute that Congress has provided a remedial scheme by which to pursue his *Ford* claim—an application for a writ of habeas corpus filed under 28 U.S.C. § 2241 in the district of confinement. And accordingly, against the backdrop of a half-century's worth of the Supreme Court's cases refusing to infer unwritten causes of action in such circumstances, Purkey has no substantial likelihood of showing that a new cause of action should be inferred directly from the Constitution to allow him to bring his claims in his preferred forum rather than the district of his confinement. Purkey has no answer to this dispositive point.

Purkey argues that because his competency could be restored at some point in the future, his *Ford* claim does not necessarily bar his execution and thus does not qualify as a "core habeas" claim. Opp. at 7-10. But this argument misunderstands the proper temporal inquiry under *Nelson v. Campbell*, 541 U.S. 637 (2004), and *Hill v. McDonough*, 547 U.S. 573 (2006), which provides that a claim sounds exclusively in

habeas—and not in other express causes of action established by Congress -- where the injunction sought "would . . . necessarily foreclose the [government] from implementing the lethal injection sentence *under present law.*" *Hill*, 547 U.S. at 583 (emphasis added). That is precisely what Purkey seeks: a finding under *Ford* that he is incompetent to be executed and thus the government is barred from executing him under current law. His claim is therefore properly treated as a postconviction core habeas claim. *See, e.g., Dunn v. Madison*, 138 S. Ct. 9, 11 (2017) (considering a state prisoner's *Ford* claim brought under the federal habeas statute); *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) (same). As the government has explained, see Stay App. at 11, Purkey was aware that his claims should have been brought as habeas claims in the Southern District of Indiana before he initiated this suit, yet chose not to file them there -- for what appear to be impermissible strategic reasons, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004).

Purkey's due process claim, which is entirely derivative of his *Ford* claim, does not change that analysis. All agree that Purkey has no entitlement to any specific process until he makes the threshold showing of incompetency, and any request for such process is proper only in the Indiana district court with authority to consider his *Ford* claim, as the government has consistently argued in this litigation. *Contra.* Opp. at 10. The district court erred in permitting Purkey to infer a new, unwritten cause of action based solely on the Eighth Amendment in a self-selected court seeking relief against the Attorney General -- rather than under the cause of action, in the correct

jurisdiction, and against the correct defendant, as clearly detailed in the federal habeas statute. *See Padilla*, 542 U.S. at 443-445.

Moreover, even if this were not so, the underlying merits of Purkey's claims are meritless. Purkey has not made a substantial threshold showing of incompetency, and thus he would be unlikely to succeed on either the merits of his *Ford* claim or his derivative due process claim even had he brought them in the correct jurisdiction. As the government explained in its stay application, Mot. at 15-16, the district court's conclusory findings in a single paragraph fall far short of the required showing. The same is true of the similarly conclusory discussion of the merits in Purkey's opposition brief, see Op. at 12-13: those arguments are insufficient to overcome the "presume[ption] that [a prisoner] remains sane at the time sentence is to be carried out." *Ford*, 477 U.S. at 426 (Powell, J., concurring in part and concurring in the judgment)(footnote omitted). Indeed, despite the fact that the burden is on Purkey to make the substantial showing, it is the *government's* application that actually surveyed the materials presented by Purkey and demonstrated why they do not come close to demonstrating that Purkey is unable to understand the reason for his execution. Mot. at 12-16. And, without making this threshold showing, Purkey is not entitled to *any* specific process or discovery, whether formal or informal—which means that he was not entitled to any of the specific documents or tests that he has sought in this litigation.

Purkey's response to these points falls flat, as does his arguments that he could somehow have succeeded if the government had not, in his view, sought "a litigation advantage by depriving counsel of information about their client." Opp. at 15. Purkey lastly asserts (Opp. 14) "significant interference [by the government] with his attempts to gather critical evidence" of his medical condition and offers a number of factual accusations (undeveloped in the record) about the government's alleged conduct. The government disputes these allegations for at least three reasons.

*First*, defense counsel failed to make discovery requests or obtain court orders authorizing medical testing despite BOP requests. ECF No. 27, at 1-2. At times, Purkey also insisted that BOP cover the cost of the requested procedures. *Id* at. 9. *Second*, Purkey withdrew his initial (Dec. 2019) motion on the district court for expedited discovery, *see* ECF No. 11, and renewed it only on June 23, 2020, *see* ECF No. 24. BOP officials nevertheless tried to accommodate counsel's testing requests and provided counsel with information to schedule in-person visits. *Id.* at 8 n.1; ECF No. 27-1 (Siereveld Decl.). At this point, the government has completed all requested medical tests, and Purkey's response has not alleged otherwise. *Third*, Purkey pressed many of these allegations below. The district court's order did not credit them in balancing the relative equities. ECF No. 36, at 12. This Court should not either.

Purkey asserts (Opp. 15-16) that "five minutes before this filing, Mr. Purkey's counsel learned that the Government appears to have had scientific confirmation in their possession of significant structural abnormalities in Mr. Purkey's brain that are

consistent with cognitive impairment such as vascular dementia or other conditions." The government assumes that counsel is referring to the reports of the recent testing and disagrees with his characterization. The reports do not indicate that Purkey suffers from Alzheimer's or dementia. In any event, the question in this case is whether Purkey can rationally understand the reason for his execution. Abnormalities in Purkey's brain are not particularly probative to this question. Purkey's own statements and writings—which the government has previously quoted—show that he fully understands the reason for his execution.

Moreover, to the extent that Purkey suggests (Opp. at 19-20) that it would be improper to carry out his sentence at all during the COVID-19 pandemic, such challenges have been rejected by other courts. *See Peterson v. Barr*, 2020 WL 3955951 (7th Cir. July 12, 2020). And the suggestion is inconsistent with the Supreme Court's vacatur last night of another injunction by the same district court so that Purkey's and other inmates' executions "may proceed as planned" this week. *Barr v. Lee*, 2020 WL 3964985, at *2.

**\* \* \***

For the foregoing reasons and those stated in the government's application for a stay or vacatur, this Court should immediately stay or summarily vacate the district court's preliminary injunction.

Respectfully submitted,

MICHAEL R. SHERWIN
   Acting United States Attorney
   District of Columbia

BRIAN P. CASEY
J. BENTON HURST
DAVID WAGNER
   Assistant United States Attorneys
   Western District of Missouri

BRIAN C. RABBITT
   Acting Assistant Attorney General
   Criminal Division

s/ CHRISTOPHER J. SMITH
CHRISTOPHER J. SMITH
   Attorney
   Appellate Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave. NW
   Suite 1264
   Washington, DC 20530
   (202) 532-4154
   Christopher.J.Smith@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1.     This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(a) because it contains 1,841 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.     This motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 14-point typeface using Microsoft Word for Office 365.

s/ CHRISTOPHER J. SMITH
CHRISTOPHER J. SMITH
   Attorney
   Appellate Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave. NW
   Suite 1264
   Washington, DC 20530
   (202) 532-4154
   Christopher.J.Smith@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on July 15, 2020, I electronically filed the foregoing Reply in Support of Emergency Motion with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I further certify that, pursuant to D.C. Cir. R. 27(f), counsel communicated by telephone with the Clerk of the Court and with appellee's counsel regarding the need for expedited action on this motion.

s/ CHRISTOPHER J. SMITH
CHRISTOPHER J. SMITH
    Attorney
    Appellate Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave. NW
    Suite 1264
    Washington, DC 20530
    (202) 532-4154
    Christopher.J.Smith@usdoj.gov
