# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 20-5207**                                **September Term, 2019**

**1:19-cv-03570-TSC**

**Filed On: July 15, 2020**

Wesley Ira Purkey,

      Appellee

   v.

William P. Barr, Attorney General, et al.,

      Appellants


**BEFORE:**    Rogers, Griffith, and Pillard, Circuit Judges

## O R D E R

Upon consideration of the emergency motion to stay or vacate preliminary injunction barring federal executions, the opposition thereto, and the reply, it is

**ORDERED** that the emergency motion for a stay pending appeal of the district court's order enjoining plaintiff's execution be denied.

Wesley Ira Purkey is a federal prisoner whose execution is scheduled for today, July 15, 2020. On November 26, 2019, Purkey filed a complaint alleging that his Eighth Amendment right to be free from cruel and unusual punishments and his Fifth Amendment right to due process would be violated unless he received a Ford hearing to determine whether he is competent to understand why he is being executed. See Compl., Purkey v. Barr, No. 19-cv-3570 (D.D.C. Nov. 26, 2019); see also Ford v. Wainwright, 477 U.S. 399 (1986). In late February, the government moved to dismiss his complaint or to transfer venue to the United States District Court for the Southern District of Indiana, see Defs. Mot. to Dismiss, Purkey v. Barr, No. 19-cv-3570 (D.D.C. Feb. 24, 2020), and briefing on that motion was completed at the end of March. On June 15, 2020, the Federal Bureau of Prisons announced that Purkey would be executed on July 15, 2020. See Notice, Purkey v. Barr, No. 19-cv-3570 (D.D.C. June 15, 2020). A week later, Purkey filed a motion for a preliminary injunction on two grounds: (1) that he is not currently competent to be executed under the Eighth Amendment, and (2) that the government had denied him due process in connection with his Eighth Amendment claim by failing to conduct a competency hearing. See Pl. Mot. for a Prelim. Inj., Purkey v. Barr, No. 19-cv-3570 (D.D.C. June 22, 2020).

Early this morning, the district court granted Purkey's motion for a preliminary injunction. The district court first held that it had jurisdiction to consider Purkey's claims under 28 U.S.C. § 1331, rejecting the government's argument that Purkey was required

to bring his claims through the federal habeas statute. The district court then determined that Purkey had shown a likelihood of success on the merits of his Fifth and Eighth Amendment claims because he had made the "substantial threshold showing of incompetency" required by Ford. The district court further held that Purkey would suffer irreparable harm if he were executed before being found competent. Finally, acknowledging the government's "important interest in the timely enforcement of a [death] sentence," Bucklew v. Precythe, 139 S. Ct. 1112, 1133 (2019), the district court concluded that the balance of equities and the public interest favored Purkey.

The government seeks a stay pending appeal of the preliminary injunction on two grounds: (1) the district court lacks jurisdiction over Purkey's claims; and (2) Purkey has failed to make the threshold showing of incompetency required by Ford. In evaluating a motion for a stay pending appeal, we consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 426 (2009). Based on those factors, we deny the government's motion.

The government has not met its burden of showing a likelihood of success on its jurisdictional claim. The government argues that Purkey's challenges must have been brought under the federal habeas statute, 28 U.S.C. § 2241, in the Southern District of Indiana where Purkey is currently incarcerated. An inmate challenging the execution of his death sentence must bring that challenge through the habeas statute when "a grant of relief to the inmate would necessarily bar the execution." Hill v. McDonough, 547 U.S. 573, 583 (2006). However, an inmate may file suit for injunctive relief outside of the habeas statute when he "appear[s] willing to concede the existence of an acceptable alternative" that would allow his execution to go forward. Id. at 579 (citing Nelson v. Campbell, 541 U.S. 637, 645-46 (2004)). Purkey's claim is analogous to a method-of-execution claim, which the Supreme Court has held may be brought outside of the federal habeas statute. Purkey does not seek to permanently bar his execution, rather he simply seeks a competency hearing under Ford. If he is found competent at such a hearing, the execution may go forward. And even if he is found incompetent, such a finding would only impose a temporary bar on his execution. When an inmate claims incompetence, "the only question raised is not whether, but when, his execution may take place." Ford, 477 U.S. at 425 (Powell, J., concurring); see also Panetti v. Quarterman, 551 U.S. 930, 949 (2007) (explaining that Justice Powell's concurring opinion is controlling under the Marks rule). Because granting the relief that Purkey seeks will not alter his sentence or permanently enjoin his execution, we cannot conclude that the government has met its burden of showing a likelihood of success on its jurisdictional claim.

In this posture, we also cannot conclude that the government has met its high burden of a "strong showing" of likelihood of success on the merits of Purkey's Fifth and Eighth Amendment claims. Since Ford, the Supreme Court has held that "the Eighth Amendment's ban on cruel and unusual punishments precludes executing a prisoner who has 'lost his sanity' after sentencing." Madison v. Alabama, 139 S. Ct. 718, 722 (2019) (quoting Ford, 477 U.S. at 406)). To overcome the presumption of competency and be entitled to a hearing under Ford, Purkey must make a "substantial threshold showing of insanity." Panetti, 551 U.S. at 949 (internal quotation marks omitted). Specifically, Purkey must make a substantial showing that his "mental illness prevents him from rationally understanding why the State seeks to [execute him]." Madison, 139 S. Ct. at 722 (internal quotation marks and brackets omitted). "[T]he issue is whether a prisoner's concept of reality is so impaired that he cannot grasp the execution's meaning and purpose or the link between his crime and its punishment." Id. at 723 (internal quotation marks and brackets omitted). The Court has acknowledged that both psychosis and dementia may lead to such impairment. See id. at 729 ("[D]ementia . . . can cause such disorientation and cognitive decline as to prevent a person from sustaining a rational understanding of why the State wants to execute him."); id. at 723 (noting that both Ford and Panetti "suffered from 'gross delusions' stemming from 'extreme psychosis'" (quoting Panetti, 551 U.S. at 936, 960)).

The district court concluded that Purkey had made that showing based on a "series of reports and declarations" that described Purkey's "history of mental illness, including delusional and paranoid thinking" and recent onset of dementia. Order at 10, Purkey v. Barr, No. 19-cv-3570 (D.D.C. July 15, 2020); see, e.g., Mot. for a Prelim. Inj., Ex. 4 (Hyde Decl.), 14 ("[Purkey's] intellectual deficits, paranoia, delusional beliefs, and the course of his progressive deterioration are consistent with the diagnosis of dementia."). In particular, the district court relied on an expert report from Dr. Bhushan Agharkar, who concluded that "Mr. Purkey lacked a rational understanding of the basis for his execution." Compl., Ex. 1, at 12. Dr. Agharkar reported that Purkey believed the "'real reason' he was going to be executed" was because the government was retaliating against him for "filing lawsuits in other people's cases" and that Purkey had a "fixed belief that he [was] going to be executed in retaliation for his legal work, to prevent him from being a hassle for the government." Id. at 11-12. Dr. Agharkar explained that "[w]hile Mr. Purkey can recite the fact that his execution is for the murder of Jennifer Long, he lacks rational understanding of that fact. This is an example of parroting, rather than having a rational understanding." Id. at 12.

The Supreme Court has concluded that an inmate made a threshold showing of incompetency in a similar setting. See Panetti, 551 U.S. at 954-55. There, an expert witness explained that "although petitioner claims to understand 'that the state is saying that it wishes to execute him for his murders,' he believes in earnest that the stated

reason is a 'sham' and the State in truth wants to execute him 'to stop him from preaching'" about a spiritual war. Id. (brackets omitted).

The Government challenges Dr. Agharkar's memorandum because it "conflates Purkey's understanding of the reason for his execution, which would be constitutionally disqualifying under Ford, with Purkey's understanding of the reason for scheduling his execution date, which is not." Emergency Mot. to Stay or Vacate Prelim. Inj. at 12, Purkey v. Barr, No. 20-5207 (D.C. Cir. July 15, 2020). But Dr. Agharkar's report expressly states that Purkey believes that retaliation is the "reason for his execution" – not just the reason for its timing. Compl., Ex. 1, at 11. The Government also argues that the remaining evidence of Purkey's history of mental illness does not indicate that he is rationally incapable of understanding the reason for his sentence, Emergency Mot. to Stay or Vacate Prelim. Inj. at 14-16, but that evidence – even if insufficient standing alone – could tend to corroborate the opinion in Dr. Agharkar's memorandum.

Given the similarity to Panetti, the deference we owe to the district court's factual findings, and the procedural posture that requires the Government to make a "strong showing" to obtain a stay, we cannot conclude that the Government – at this stage – has demonstrated the requisite likelihood of success.

We are cognizant of the Supreme Court's repeated instruction that "'[l]ast-minute stays' like that issued this morning 'should be the extreme exception, not the norm.'" Barr v. Lee, 2020 WL 3964985 (U.S. July 14, 2020) (quoting Bucklew, 139 S. Ct. at 1134). Recognizing the government's interest in the timely execution of this sentence, the parties are ordered to comply with the expedited briefing schedule regarding the motion to vacate the preliminary injunction, set forth by separate order. Further, given the Government's interest in timely execution of the sentence, and given the delay caused by the district court's eleventh-hour order in this case, the district court should continue to expeditiously proceed to adjudicate Purkey's Ford claim, even as this Court considers whether to vacate the preliminary injunction. This court cannot punish Purkey as a result of that delay by denying him one last opportunity to be heard on all his claims.

### Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:     /s/
Scott H. Atchue
Deputy Clerk